# Richmond

## CITY OF ALEXANDRIA, A MUNICIPAL CORPORATION, V. THE TEXAS COMPANY, A CORPORATION.

February 20, 1939.

Record No. 2025.

Present, All the Justices.

The opinion states the case.

*Carl Budwesky* and *Armistead L. Boothe,* for the appellant.

*Guy B. Hazelgrove* and *Ralph T. Catterall,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In October, 1936, The Texas Company, the lessee of a lot at the southeastern intersection of Washington and Wilkes streets, in the city of Alexandria, applied to the city council asking it (1) to change the zoning of the property from "A" Residence Zone (which restricted its use to residence purposes) to "D" Commercial Zone (which permitted its use for business purposes), and (2) to grant a permit for the erection and operation of a filling station on the lot.

The plans and specifications for the proposed filling station showed that it was to be illuminated at night with a system of floodlights such as is commonly in use on like premises.

There was objection by at least one neighboring property owner to both the change in zoning and the granting of the permit for the erection of the filling station unless the applicant would agree not to install on the premises the proposed floodlights. After some negotiations The Texas Company agreed to this condition. Thereupon the council passed an ordinance rezoning the property as requested, subject to the express understanding and agreement on the part of The Texas Company and the owner of the property that no floodlights would be used thereon.

Immediately thereafter a resolution was adopted by the council granting to The Texas Company a permit to erect a filling station on the lot, subject, however, to the same stipulation and agreement as to the lighting system.

The station was erected and the agreed method of lighting was installed. Some months later The Texas Company

applied to the council for a permit to install on the premises a system of floodlights similar to that which had been the subject of the original controversy when the change in the zoning was before the council. This permit was refused.

Thereupon The Texas Company filed its bill of complaint in the court below against the city of Alexandria and certain of its officials, alleging that the refusal of the city to allow it to install and operate the proposed system of floodlights on the premises deprived it of valuable property rights without due process of law and denied to it the equal protection of the laws in violation of the Federal and State Constitutions. It prayed that the city and its officials be enjoined from interfering with the installation and operation of the proposed lighting system on the station.

The city answered alleging that "the erection and operation of said floodlighting system would be detrimental to the health, safety, general welfare and prosperity of the city"; that for this reason the property had been rezoned and the permit granted to erect the filling station upon the express agreement on the part of The Texas Company that such lighting system would not be installed on the premises; and that the city had the right to hold The Texas Company to the terms of its bargain with reference to the matter.

After hearing the evidence *ore tenus* the trial court entered a decree granting the prayer of the bill and the injunctive relief sought. From this decree the city has appealed.

The hearing developed the following material facts in addition to those already stated:

The proposed type of floodlights was such as is generally in use throughout the country in modern filling stations. Reflectors were to be placed so as to focus lights on the premises without being thrown in the eyes of passers-by. Besides furnishing necessary light for the proper and convenient use of the premises, its purpose was to beautify the station and to attract the attention of passing motorists as prospective customers. These features added to the desirability of using this type of lighting.

Numerous other filling stations in the city of Alexandria have the same or similar types of floodlights. Several of these are located on Washington street, where The Texas Company's station is located, and others near by. There is no evidence that the city has refused a permit to install floodlights on any other filling station. While a Standard Oil Company station directly across the street from the property here involved is not equipped with lights of this character, the evidence does not show whether this results from the choice of the owner or from compulsion by the city.

There is no evidence that the location of a filling station at this particular place, or the operation thereon of the proposed system of floodlights, would be in any way detrimental to the public health, the public morals, public safety, or the general welfare of the public. There is positive evidence that such a lighting system would promote the public safety.

Neither is there any evidence that the denial of the permit to The Texas Company for the installation of floodlights on its property is a part of the city's general plan to develop this particular street or this particular area along certain lines which would exclude lights of this character for aesthetic reasons. On the contrary, there is positive evidence that other filling stations on this same street and in this neighborhood are allowed the use of floodlights.

Likewise, there is no evidence that the proposed amount of illumination is beyond what is reasonably required for the use and enjoyment of the property. While the one objector testified that the proposed lighting system would produce a disagreeable glare, witnesses for The Texas Company denied that this would be true. This conflict in the evidence the finding of the trial court settled in favor of The Texas Company.

It will be observed that we are not here concerned with the question, sometimes very troublesome, as to whether the zoning should have been changed from residence to commercial purposes. The city admits that such change was proper.

Nor does the instant case involve the question as to whether a permit should have been granted for the erection of a filling station on the lot in question. The city admits in its answer that the erection and operation of a filling station at that location, without the proposed floodlighting system, is entirely proper and is not detrimental to the public health, safety, morals, or general welfare of the public.

We are concerned only with the validity of a restriction which the city has imposed upon the type of lighting to be used upon this property.

The city contends that the restriction is reasonable and valid, and is enforceable under its police power, as well as under the express terms of its agreement with the property owner.

The property owner contends that since there is no evidence that the restriction sought to be imposed bears any relation to the public health, safety, morals, or general welfare, it is purely arbitrary and not enforceable under the city's police power; that the imposition of the restriction on this property, under the circumstances here related, is discriminatory; and that its agreement to the restriction was obtained under duress and is not, therefore, enforceable.

There is, of course, no doubt as to the city's right, under its police power, to impose reasonable restrictions on the use of the property in question. The validity of zoning ordinances, now generally upheld, is an illustration of this. *West Bros. Brick Co.* v. *Alexandria,* 169 Va. 271, 192 S. E. 881 (appeal dismissed for want of a substantial federal question, 302 U. S. 658, 58 S. Ct. 369, 82 L. Ed. 508).

But under its police power a city may not arbitrarily restrict an owner in the use of his property. A restriction of the character sought to be imposed here must "bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow* v. *City of Cambridge,* 277 U. S. 183, 188, 48 S. Ct. 447, 448, 72 L. Ed. 842. See also, *West Bros. Brick Co.* v. *Alexandria, supra.*

In the instant case there is no evidence whatsoever that the restriction against this property owner's use of the

desired type of lighting bears any relation to the public health, safety, morals, or general welfare.

In the next place, the equal protection clause of the Fourteenth Amendment, Const. U. S. C. A., prohibits the discrimination against an owner in the imposition of restrictions on the use of his property. A city may not deny to one owner the privilege of installing on his property the type of lighting which he desires, and grant such a privilege to another property owner of like qualifications under like circumstances and conditions. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; *Thompson* v. *Smith*, 155 Va. 367, 377, 154 S. E. 579, 71 A. L. R. 604.

And yet that is precisely what the city has done in the instant case. While The Texas Company is denied the right to use floodlights on its filling station, the privilege to do so is granted to its competitors in the same neighborhood and even on the same street. The record discloses no reason whatsoever for this discrimination.

We think, therefore, that the restriction which the city has imposed upon The Texas Company's use of its property, in forbidding it the right to install thereon the desired system of lighting, is arbitrary, discriminatory, and violative of the rights guaranteed to this property owner under the Fourteenth Amendment.

This brings us to the next question as to whether The Texas Company is bound by its agreement not to use floodlights on the premises.

We have already seen that there was no valid reason why the city should have declined either the application for a rezoning of the property or the application for a permit to erect thereon a filling station, since admittedly the public health, safety, morals, or general welfare of the community were not adversely affected. And yet the city threatened to forbid altogether the use of the property as a filling station unless The Texas Company would agree not to use the type of lights to which we have just seen it was entitled under the Constitution. This was duress and coercion of the strongest kind. The Texas Company agreed to

acquiesce in the restriction placed upon its property under the compulsion of that duress.

The principle is well settled that a State can not grant a privilege subject to the agreement that the grantee will surrender a constitutional right, even in those cases where the State has the unqualified power to withhold the grant altogether. Where such a condition is imposed upon the grantee, he may ignore or enjoin the enforcement of the condition without thereby losing the grant.

Illustrative of this principle is the holding that while a State may decline altogether to license a foreign corporation to do business within its borders, it may not exact of such corporation, as a condition to its right to do business therein, an agreement that it will surrender its constitutional right to sue in the federal courts. See *Terral* v. *Burke Construction Co.*, 257 U. S. 529, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186; *Power Manufacturing Co.* v. *Saunders*, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165.

Upon similar reasoning it was held in *Frost* v. *Railroad Commission*, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457, that while the State could altogether forbid the use of its highways for commercial gain, it could not impose upon a private trucking carrier, as a condition to its right to use such highways, the unconstitutional requirement that it assume the burdens of a common carrier against its will.

If a State, possessing the power to deny a grant altogether, can not grant a privilege subject to the condition that the grantee will surrender a constitutional right, certainly it can not constitutionally exact this price of the grantee where, as in the instant case, it has no lawful power to decline the grant.

Yet this is just what the city has undertaken to do here. Although it had no right to deny the change in the zoning of the property, and had no right to deny the permit for the erection of the filling station thereon, nevertheless it exacted of the property owner, as the price for the grant

of these privileges, the surrender of its right to install on the property the desired system of lights.

Clearly, therefore, this property owner is not bound by the illegal agreement wherein it was forced to surrender its constitutional right to install the desired system of lighting on its property as a condition to its obtaining other privileges to which it was entitled.

Neither can the restriction against the proposed lighting system be justified on the theory that it is a variance permit, as contended by the city.

Section 3091(7) of Michie's Code of 1936 (Acts 1926, ch. 197, pp. 345, 346, as amended by Acts 1930, ch. 205, p. 555) authorizes the local court to "provide for the appointment of a board of zoning appeals." Section 3091(13) (Acts 1926, ch. 197, pp. 345, 347) grants to this board the power, among others, "To authorize upon appeal in special cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Clearly this statute has no bearing on the present controversy. The restriction sought to be imposed on the use of this property is not the result of the ruling of a board of zoning appeals. It results from the direct action of the city council. The statute gives to the board of zoning appeals and not to the city council the power to grant variance permits, even if it be assumed that the restriction here involved is within the meaning of that term.

On the whole our conclusion is that the restriction sought to be imposed upon the property here is void and unenforceable. Accordingly the decree appealed from is

*Affirmed.*