Present: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

BOARD OF SUPERVISORS OF
THE COUNTY OF ALBEMARLE

OPINION BY
v. Record No. 201523                         CHIEF JUSTICE S. BERNARD GOODWYN
                                                          June 2, 2022
ROUTE 29, LLC

FROM THE CIRCUIT COURT OF THE COUNTY OF ALBEMARLE
Cheryl V. Higgins, Judge

In this appeal, we consider whether the owner of rezoned property, who claims that the

triggering of a conditional proffer operated as an unconstitutional condition, states a cause of

action, and whether the circuit court erred in denying a motion to strike the owner's evidence.

I. BACKGROUND

In September 2007, the Board of Supervisors of Albemarle County (the County)

approved a rezoning for property located at Hollymead Town Center, Area A, Block A1 (the

Project), subject to enumerated voluntary proffers. The Project is part of a much larger

development at Hollymead Town Center, and has been owned by Route 29, LLC (the Owner)

since September 2009.

The following conditional proffer (the Transit Proffer) has continuously applied since the

original rezoning in 2007:

> 2. **Public Transit Operating Expenses –** Within thirty days after demand by the
> County after public transportation service is provided to the Project, the
> Owner shall contribute $50,000 cash to the County to be used for operating
> expenses relating to such service, and shall contribute $50,000 cash to the
> County each year thereafter for a period of nine (9) additional years, such that
> the cash contributed to the County pursuant to [the Transit Proffer], shall total
> Five Hundred Thousand Dollars ($500,000). The cash contribution in years
> two through ten shall be paid by the anniversary date of the first contribution.

At its September 2015 meeting, the County discussed the mechanics of the Transit

Proffer, the fact that the County could not demand payment until public transportation was

established, and the concern that the public transportation would have to run continuously for ten years in order for the County to collect payment in full. One board member warned that "it would need to be a real transit bus, because to qualify for the proffer they will need to have a [Charlottesville Area Transport bus, i.e.,] CAT bus." He later noted that a CAT bus used to run in the area but there was not enough ridership in the area and CAT withdrew running the route.

The County discussed the establishment of a commuter route (the Commuter Route), which would be operated by JAUNT, Inc. (JAUNT),[*] to run from northern Albemarle County to downtown Charlottesville. A JAUNT executive addressed the County regarding the Commuter Route providing service in the morning and evening. The County directed staff to study the proposal and "determine the steps necessary to implement the service."

At its November 4, 2015, meeting, the County again discussed the Commuter Route. It noted that the County had received several requests from residents for such a service, and that the Commuter Route "would also help relieve traffic congestion along the Route 29 corridor during the widening of Route 29" and during other related road construction. A representative for JAUNT told the County that, through a survey conducted in the neighborhood where the Commuter Route was to originate, twenty-five people expressed interest in the Commuter Route because they wished to commute to the University of Virginia (UVA) or the downtown area. One board member noted that "it may take a few years to build ridership on the route, but there are more houses approved that will be going up in this area." A route with a stop at the Project was deemed the most viable because a substantial portion of the funding for the Commuter Route could come from the Transit Proffer funds.

---

[*] JAUNT, Inc. is a regional public transportation provider owned by the City of Charlottesville and several surrounding counties.

2

A board member stated that "the County has a significant number of proffers they may not end up using, but this one is an asset and should at some point be executed." To that end, the board member inquired "if they can start the service and interrupt it if the ridership is not there, then wait until the density becomes higher to reinstate it." The County approved the Commuter Route.

In a letter dated November 16, 2015, counsel for the Owner wrote to the County, objecting to the County's reliance on the Transit Proffer to fund the Commuter Route. The Owner noted that proffers must be "reasonable" and pointed out that the County's own Land Use Law Handbook stated that such reasonableness required "an essential nexus and rough proportionality between the [Transit Proffer] conditions and the impacts they seek to address." The letter noted that the Commuter Route would take people from northern Albemarle County to and from work at UVA or downtown, and "has absolutely nothing to do with [the Project]." The Owner insisted that the Project was merely being used as "a convenient hub for northern Albemarle commuters to meet the bus, but not to be a destination for this route." The letter also declared that the "need for [the Commuter Route], if one can even be demonstrated, is certainly not created by or related to the [Project]."

In its reply letter dated December 1, 2015, the County stated that "[t]he transportation impacts resulting from this rezoning [of the Project] were a key consideration [of the Transit Proffer], and many of the proffers accepted in conjunction with the rezoning addressed transportation-related impacts." The County also explained that the Commuter Route provided "public transportation service" within the meaning of the Transit Proffer, and that "it may be reasonably assumed that riders will get on and off the bus at [the Project] transit stop." Additionally, the County responded that "[the Project] is a large employment center and

3

providing public transportation for the employees of [the Project] reasonably addresses some of the transportation impacts resulting from the [Project] rezoning." The County warned that the Owner's failure to comply with the Transit Proffer would constitute a zoning violation.

On December 2, 2015, the County approved the appropriation of funds to establish the Commuter Route, which included a stop at the Project, with the approved budget relying on future funds from the Transit Proffer. At the December 2, 2015, meeting, the Owner again represented that reliance on funds from the Transit Proffer for the Commuter Route was "not a reasonable application of the [Transit Proffer], and is not connected in terms of the required nexus." Counsel for the Owner emphasized that "the proposed [Commuter Route]" is designed "to bring people from the northern part of the County into the City, not related to the services provided by [the Project]."

The Commuter Route began operating on May 2, 2016. It is open to the public and includes a stop at the Project. It has never operated between the hours of 9:00 a.m. and 4:30 p.m., after 7:30 p.m., or on weekends.

On May 20, 2016, the County sent the Owner a letter requesting the first $50,000 payment on the Transit Proffer in light of the establishment of the Commuter Route. The County requested payment by June 20, 2016, and it warned that failure to comply would constitute a zoning violation. The Owner did not pay the requested installment of the Transit Proffer.

On May 7, 2018, the County sent another request for payment on the Transit Proffer, this time in the amount of $150,000. Again, the Owner did not make the requested payments.

On August 7, 2018, the County issued a notice of official determination of violation, informing the Owner that the Project was in violation of the County's zoning ordinance because of the Owner's failure to make payments required by the Transit Proffer.

4

On September 6, 2018, the Owner petitioned the County regarding an appeal of the zoning violation. A letter attached to the petition reiterated the Owner's arguments that the Commuter Route was unrelated to the Project and did not address any impacts of the rezoning, and, therefore, could not trigger its obligation to make payments pursuant to the terms of the Transit Proffer.

On December 5, 2018, the County held a hearing on the Owner's appeal. The Owner reiterated the argument that the current attempt to collect on the Transit Proffer was improper because the Commuter Route lacked an essential nexus to the impacts of the Project. The Owner acknowledged that the Transit Proffer could be lawfully enforced at a future date, if the demand for payment was based upon a trigger that possessed a nexus to the impacts of the Project. The County unanimously voted to deny the Owner's appeal.

On January 4, 2019, the Owner filed a complaint and petition for review, concerning the zoning violation, in the Circuit Court of Albemarle County, praying for a temporary injunction against any enforcement action related to the Transit Proffer, an order stating that the Commuter Route was not a valid trigger of the Transit Proffer's obligations, an order reversing the zoning violation, and "other and further relief as [the circuit court] deems just and appropriate." The complaint reiterated the arguments previously put forward by the Owner at County meetings and proceedings, and presaged the evidence and testimony that would be offered at trial. The circuit court granted the temporary injunction, enjoining the County from collecting funds related to the Transit Proffer, pending adjudication of the pending case.

The parties subsequently filed a list of agreed stipulations, a combination of agreed-upon facts and exhibits, as well as several provisional exhibits that were stipulated to be authentic but not necessarily admissible. Among these facts, the parties stipulated that the Owner owns the

5

Project; that the Project was subject to the Transit Proffer; that the Commuter Route "is a form of public transportation" and had been operating since May 2, 2016; that the Owner had been arguing that the Commuter Route lacked an essential nexus and rough proportionality to the impacts of the Project since before the Commuter Route was approved; that the County had requested payment on the Transit Proffer on two occasions; and that the Owner had not made any of the requested payments on the Transit Proffer. Among the stipulated exhibits were the minutes from the County's meetings.

On May 10, 2019, the County filed a plea in bar and demurrer. The demurrer sought dismissal of the complaint for failure to allege sufficient facts to state a claim because the Owner had purportedly admitted all of the facts necessary for the affirmation of the zoning violation. The plea in bar argued that the complaint was time-barred because it had not been filed within thirty days of the County's acceptance of the Transit Proffer and that the Owner had not exhausted its administrative remedies. After hearing argument, the circuit court overruled the demurrer and denied the plea in bar.

At trial, the Owner offered two witnesses, Nena Harrell, a longtime associate of the Owner, and Carl Hultgren, an expert on traffic impact analysis and mitigation. Harrell testified that the Project contained only commercial retailers, with Kohl's as the "anchor," and no residences. She also told the circuit court that typical times for high traffic volume to shopping centers are "midday and on weekends." She further noted that the Owner had fulfilled several other proffers, all designed to mitigate traffic impacts of the Project, including projects to widen Route 29, land dedications to build new roads, and other construction projects. When asked about the Owner's understanding of the Transit Proffer and the previous discussions with the County, Harrell testified that it was the Owner's understanding that the trigger for the Transit

6

Proffer would be a CAT bus that would service the patrons of the Project. According to her testimony, the Owner was "blindsided" by discussions of funding the Commuter Route with the Transit Proffer funds because "that would not reduce . . . the traffic that we produced." On cross-examination, Harrell testified that the Owner had signed the Transit Proffer, and that several previous attempts to amend the language of the Transit Proffer had been unsuccessful.

Hultgren testified that analysis of hourly trip distribution data predicted that the busiest traffic time for shopping centers like the Project would be Saturday, with the second busiest being weekdays in the late evening. He also testified that the Commuter Route "actually increases the number of trips in and out of [the Project]." He noted that those riding the Commuter Route "are not there to shop, and they don't work at [the Project]." The three Commuter Route buses that stop at the Project in the morning do so between 7:00 a.m. and 8:00 a.m., hours before the Kohl's store located at the Project opens. He further testified that the Commuter Route does not run on Saturdays, the day when the Project has the biggest impact on traffic along Route 29. Finally, Hultgren stated that Route 29 typically services 40,000 cars daily, and that even if every Commuter Route bus were full of shoppers, "[i]t wouldn't be noticeable in terms of the benefit."

After hearing the witnesses, the circuit court admitted provisional stipulated exhibits over the objection of the County. Among those exhibits are several e-mail exchanges between JAUNT and the County concerning the Commuter Route at its inception; those e-mails do not mention the Project or any traffic concerns arising therefrom.

When the Owner rested its case, the County moved to strike the evidence because "the question before the [circuit court] is whether or not [the Owner] is in violation of the [Transit Proffer], not whether the [Transit Proffer] is reasonable." The circuit court denied the motion to

strike. Thereafter, the County relied on the stipulations, presented no further evidence, rested its case, and renewed its motion to strike the evidence. The circuit court took the renewed motion to strike under advisement pending closing arguments.

In closing, the Owner argued that the County's reliance on the Commuter Route as a trigger for the Transit Proffer was an unconstitutional application of the Transit Proffer. In order for the application of the Transit Proffer to be constitutional, the Owner argued, the County needed to identify the impacts resulting from the Project that were being addressed by the proffer, and those impacts needed to be documented. The Owner further argued that constitutional constraints require that the County make an "individualized determination" on the impacts of the Project and how to address them, and that state law also demands that the rezoning give rise to the need for the proffer. The Owner emphasized the lack of process, stating that, in response to interrogatories, the County had identified only "increased vehicle traffic" to and from the Project as an impact in need of redress. When asked to describe the process that went into that impact identification, the County merely mentioned "the fact that [the Owner] voluntarily acknowledged the statement to be reasonable," without any mention of data analysis or methodology.

The County argued in closing that the Commuter Route fell within the plain meaning of the language used in the Transit Proffer regarding the triggering of the Owner's obligation to pay, and that the Owner had, therefore, stipulated that it committed a zoning violation. The County claimed that the caselaw offered by the Owner, concerning constitutional impediments to enforcing the proffer payments, could be distinguished from this case because the Transit Proffer was totally voluntary; thus, constitutional limitations did not apply.

8

The circuit court denied the renewed motion to strike and found for the Owner. In its bench ruling, the circuit court explained that its decision rested on the principle that "there must be some nexus roughly relatable to the thing that you want to exercise the proffer for." The circuit court stated that "all of the notes and information that I have from minutes and otherwise suggest that all of the discussion is talking about moving not folks to and from the [Project], but to and from a certain area adjacent . . . down to Charlottesville and Albemarle." A final order was entered on September 22, 2020.

The County appeals. We granted two assignments of error:

1. The trial court erred in denying the County's demurrer because the Complaint did not state a valid cause of action where it admitted the Owner violated the zoning ordinance.

2. The trial court erred in denying the County's motion to strike, and ultimately reversing the zoning violation, when all elements of the underlying violation had been stipulated.

## II. ANALYSIS

In essence, the County contends that when a municipality conditions the grant of a land-use permit on acceptance of a conditional proffer, voluntarily entered into, the payment required by the proffer need not possess an essential nexus, nor be roughly proportional, to the impact of the development allowed by the permit in order for the proffer to be legally enforceable. We disagree.

### A. Demurrer

The County argues on appeal that the circuit court erred in overruling its demurrer because the Owner's complaint admitted violation of the zoning ordinance, and thus failed to state a cause of action. The County claims that, in its complaint, the Owner admits to not making the Transit Proffer payments and that the Commuter Route is a form of "public

9

transportation." According to the County, that was all it needed to prove in order for the circuit court to uphold the zoning violation, because the Owner voluntarily agreed to the Transit Proffer.

Because it involves issues of law, we review a circuit court's decision whether to sustain a demurrer de novo. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557-58 (2011). In order to survive a demurrer, we have held that a complaint must allege "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law." *Id.* at 558. Constitutional arguments are questions of law reviewed de novo. *Shivaee v. Commonwealth*, 270 Va. 112, 119 (2005).

The Owner's complaint alleged that the County's decision to use the Commuter Route as justification for triggering the Transit Proffer resulted in the Transit Proffer operating as an unconstitutional condition, even if the Commuter Route operated as a public transportation service. The Owner refused to make the Transit Proffer payments. Specifically, the complaint averred that, by forcing the Owner to pay, as a condition of its rezoning of the Project property, for a commuter route with no essential nexus to the Project, enforcement of the Transit Proffer in this case, "impermissibly burden[ed] the [Owner's] right not to have property taken without just compensation." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013).

The Supreme Court of the United States has long recognized a principle, known as the unconstitutional conditions doctrine, "that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Id.* at 604. Even earlier than the Supreme Court of the United States, we adopted the same principle, holding that "a [s]tate can not grant a privilege subject to the agreement that the grantee will surrender a constitutional right, even in those cases where the state has the unqualified power to withhold the grant altogether." *City of Alexandria v. Texas Co.*, 172 Va. 209, 217 (1939).

10

The Fifth Amendment to the Constitution of the United States creates such a constitutional right, providing that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This protective right constrains state government action through its incorporation into the Fourteenth Amendment's Due Process Clause. *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897).

In the land-use context, the unconstitutional conditions doctrine prevents a municipality from conditioning the grant of a land-use permit on the applicant's surrender of their right to just compensation for property expropriated for public use. *See Koontz*, 570 U.S. at 605-06. This is true when the conditional proffer exacts a dedication of real property, and it also applies when the conditional proffer exacts cash payments from the applicant, because those payments "burden[ the applicant]'s ownership of a specific parcel of land." *Id.* at 613. In other words, while a state, under its police power, may regulate land use to further legitimate state interests, it may not use this power as a cudgel to coerce concessions from a land-use applicant who seeks to repurpose her property. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 837 (1987).

That said, the unconstitutional conditions doctrine must be interpreted and applied in light of the fact that rezoning can, and often does, "impose costs on the public that dedications of property"—or cash payments toward mitigation efforts—"can offset." *Koontz*, 570 U.S. at 605. To strike the proper balance—between preventing "extortionate demands" on the one hand and "[i]nsisting that landowners internalize the negative externalities of their conduct" on the other— the Supreme Court of the United States issued a trio of opinions that created a test to determine whether a conditional proffer operates as an unconstitutional condition in the land-use permitting context. *Id.* at 605-06.

11

The Supreme Court of the United States has held that an "essential nexus" must exist between the condition placed on the land-use permit application and the "original purpose of the building restriction." *Nollan*, 483 U.S. at 837. In *Nollan*, the Court ruled that conditioning the grant of a land-use permit to build a beach house on the applicant's agreement to dedicate a public-access easement across their property operated as an unconstitutional condition because the stated purpose of the building prohibition was to protect "visual access to the beach," a purpose not furthered by the grant of a public-access easement. *Id.* at 838–39 (internal quotation marks omitted). The Court reasoned that "the lack of nexus between the condition and the original purpose of the building restriction converts that purpose to something other than what it was." *Id.* at 837.

Also, the degree of connection must satisfy a "rough proportionality" test, which requires something like a "reasonable relationship" between the exaction imposed by the conditional proffer and the projected impacts of the rezoned development. *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). Importantly, "[n]o precise mathematical calculation is required, but the [municipality] must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.*

Additionally, the Supreme Court of the United States has determined that a municipality cannot evade the strictures of the unconstitutional conditions doctrine by framing the proffer as a condition precedent to the grant of the land permit, correspondingly denying the grant if the applicant refuses to acquiesce. *Koontz*, 570 U.S. at 606. Even though, in such a case, no property has yet been taken, "[e]xtortionate demands for property in the land-use permitting context run afoul of the Takings Clause . . . because they impermissibly burden the right not to have property taken without just compensation." *Id.* at 607. The Supreme Court of the United

12

States has also held that conditional proffers demanding cash payments in exchange for a land-use permit can also implicate the unconstitutional conditions doctrine. *Id.* at 619.

This Court has previously confronted a case involving the surrender of a constitutional right in exchange for a land-use permit. In *City of Alexandria v. Texas Co.*, a land-use permit applicant agreed not to install floodlights at his filling station in exchange for the permit and amendment of the zoning ordinance. 172 Va. at 212. We found that this condition violated the applicant's rights under the Equal Protection Clause because others similarly situated were permitted to install the same floodlights. *Id.* at 216. We held that when a condition imposed violated the applicant's constitutional rights, the condition should not be enforced. *Id.* Specifically, we stated that "where such a condition is imposed upon the grantee, he may ignore or enjoin the enforcement of the condition without thereby losing the grant." *Id.*

The County's argument that the unconstitutional conditions doctrine does not apply to voluntary conditional proffers contradicts the unconstitutional conditions doctrine and this Court's precedent. In its complaint, the Owner claims that it does not owe the amount claimed by the County because the Transit Proffer cannot be enforced if the resulting payments demanded from the Owner do not have a nexus to the projected impacts resulting from the rezoned development. The complaint alleges that the Commuter Route services commuters in northern Albemarle County, taking them to their places of employment at UVA and in downtown Charlottesville, and has nothing to do with traffic or other impacts resulting from the Project. It further alleges that the Commuter Route "actually causes additional vehicles [to] travel[] to and from the [Project]" because it operates to serve workday commuters who travel to the Project when its main commercial establishments are not even open. The complaint includes references to the County's meeting minutes and alleges that placement of a Commuter Route bus

13

stop at the Project served merely as a pretext to collect the Transit Proffer funds, and that the County had no intention to ensure, and made no effort in ensuring, a nexus or rough proportionality between the proffer payments and the impacts of the Project which might be mitigated by the Commuter Route.

The allegations in the Owner's complaint were sufficient to state a claim that the Transit Proffer, as applied in this case by the County, operated as an unconstitutional condition because the proposed proffer payments lacked an essential nexus to the impacts of the Project. Also, the complaint alleges sufficient facts to establish that the payments under the Transit Proffer are not roughly proportional to the impacts of the Project, even if a nexus exists, as the County did not conduct an "individualized determination," as required by *Dolan*.

Like the condition in *City of Alexandria*, the Transit Proffer is a conditional proffer that the Owner agreed to for the purpose of receiving a land-use permit, which required the amendment of a zoning ordinance. Also like the landowner in *City of Alexandria*, the Owner claims that enforcement of the Transit Proffer, agreed to in order to receive a land-use permit, would violate the Owner's constitutional rights, in this instance the right to just compensation under the Takings Clause, and that, as in *City of Alexandria*, the unconstitutional conditions doctrine entitles the Owner to ignore or enjoin enforcement of the condition without losing the grant.

The allegations in the complaint are sufficient to state a cause of action and the circuit court did not err in overruling the County's demurrer.

### B. Motion to Strike the Evidence

Similar to its arguments regarding the demurrer, the County asserts that the circuit court erred in denying its motion to strike the evidence because the plain language of the Transit

Proffer only requires the County to provide "public transportation" to trigger the Transit Proffer, and the Owner stipulated that the Commuter Route is a form of public transportation. The County insists that the Transit Proffer should be enforced according to its plain language because the Owner voluntarily agreed to it, and the proffer has the force of law.

"We review a circuit court's decision on a motion to strike in the light most favorable to the non-moving party, and the non-moving party must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (internal quotation marks omitted). A circuit court should only grant a defendant's motion to strike when, after viewing the evidence in the light most favorable to the non-moving party, the evidence is insufficient to prove a cause of action. *International Paper Co. v. County of Isle of Wight*, 299 Va. 150, 170 (2020).

The burden rests on the municipality to justify the enforcement of a conditional proffer in the face of an unconstitutional conditions challenge. *See Dolan*, 512 U.S. at 391 n.8; *Nollan*, 483 U.S. at 836.

The Owner brought forth an unconstitutional condition challenge. It put on evidence ore tenus at trial that the Commuter Route actually brings additional vehicular traffic to the Project site. The parties stipulated that the Commuter Route does not run during the times at which traffic to the Project is greatest, and the County meeting minutes entered into evidence show little-to-no discussion concerning the identification or mitigation of traffic impacts resulting from the Project. One County board member described the Transit Proffer as "an asset" that they should not let go to waste, while others openly stated that ridership on the Commuter Route would increase as the population grows in commuter communities in northern Albemarle. The Owner's traffic impact expert also testified that the effect of the Commuter Route on overall

15

traffic would be negligible. In response, the County offered no evidence and relied on its argument that voluntary conditional proffers are binding even if they lack an essential nexus to the impacts of development.

As explained above, in order to be constitutional and enforceable, conditional proffers must bear an essential nexus and be roughly proportional to the impacts associated with the new development. The nexus requirement demands a relationship between the conditional proffer and the impacts of the development. We also explained that "rough proportionality," while not requiring a mathematical formula to determine the degree of congruence, requires an "individual determination" by the municipality that the conditional proffer targets and addresses specific impacts of the proposed development. The evidence presented at trial, including the stipulations, and exhibits, is sufficient to support the circuit court's conclusion that the County failed to meet its burden to prove that the Transit Proffer bears a nexus to, and is roughly proportional to, the impacts of the Project. Therefore, the circuit court did not err in denying the County's motion to strike the evidence.

None of this is to say that the Transit Proffer is void on its face. The Owner acknowledges, and we agree, that a different public transportation service may trigger Transit Proffer payments that are enforceable at law. However, the Commuter Route, as it is presently designed, does not. *See Nollan*, 483 U.S. at 842.

### III. CONCLUSION

In sum, the circuit court did not err in overruling the County's demurrer because the complaint alleged sufficient facts to state a claim that the Transit Proffer operated, in this instance, as an unconstitutional condition which is not enforceable. The County's argument that voluntary conditional proffers need not bear an essential nexus, nor be roughly proportional, to

16

the impacts of the development in question is without merit. The circuit court also did not err in denying the County's motion to strike the evidence because evidence presented at trial was sufficient to prove that the Transit Proffer lacked an essential nexus and was not roughly proportional to the impacts of the Project, and, therefore, should not be enforced.

*Affirmed.*