STATE EX REL. BAKER, Petitioner, v. COUNTY COURT OF
ROCK COUNTY, Respondent.

*October 7—November 30, 1965.*

4

For the petitioner there was a brief and oral argument by *J. Gordon Baker* of Evansville, *pro se.*

For the respondent there was a brief by *Garrigan, Keithley, O'Neal, Dobson & Elliott* and *Roger D. O'Neal,* all of Beloit, and oral argument by *Roger D. O'Neal,* and by *Warren H. Resh* of Madison of counsel.

A brief *amici curiae* was filed by *Bronson C. La Follette,* attorney general, *Warren H. Resh,* assistant attorney general, and *John B. McCarthy* of Madison, for the attorney general and the State Bar of Wisconsin.

A brief *amicus curiae* was filed by *Joseph W. Wilkus* of Sheboygan, chairman, and *Wendell McHenry* of Waupaca, secretary, for the Wisconsin Board of County Judges.

A brief *amicus curiae* was filed by *Wayland B. Cedarquist* of Chicago, Illinois; *Jonathan F. Ells,* Winsted, Connecticut; *James T. Jennings,* Roswell, New Mexico; *George G. Lorinczi,* Milwaukee; *Warren H. Resh,* Madison; *Sherwood Spencer,* Hollywood, Florida; *William P. Waggener,* Denver, Colorado; and *Melvin F. Adler,* Fort Worth, Texas, attorneys, and *Lorinczi & Weiss, George G. Lorinczi* and *Robert K. Steuer* of counsel, all of Milwaukee, for the American Bar Association.

FAIRCHILD, J. County Judge ROANG, the respondent, offers as justification for his refusal to act upon the papers presented by Mr. Baker, the proposition that in conducting probate proceedings Mr. Baker is engaging in the practice of law. Mr. Baker disputes this proposition, and contends, further, that such refusal impairs his rights under sec. 4, art. I, Wis. Const.; sec. 9, art. I, Wis. Const.; sec. 20, art. VII, Wis. Const., and sec. 1 of the Fourteenth amendment to the constitution of the United States.

1. *Executor's conduct of probate proceedings in court as practice of law.* It is clear that, in general, the presentation of probate matters to the county court for adjudication, when done in behalf of another, is the practice of law.

Sec. 256.30 (2), Stats., provides in part that every person who shall appear as representative of another in any proceeding before a court of record shall be deemed to

be practicing law. The county court is a court of record, and the statute does not except appearances in probate proceedings. This court has held, going beyond the statute by virtue of its own power to regulate the practice of law, that one not licensed to practice law may not appear before an administrative tribunal "as an advocate for a client in respect to the client's legal rights and to procure an adjudication of legal rights desired by the client." [1] Decisions in other states hold that appearance on behalf of others in court in probate proceedings constitutes the practice of law.[2]

The problem now before us is whether an executor [3] is to be regarded as acting in behalf of others, *i.e.*, the persons interested in the estate, where, as here, he represents to the court that he has properly performed his duties, the beneficiaries are entitled to distribution in specified proportions, and the state is entitled to taxes thereon in specified amounts, and asks the court to hear and determine those matters and enter appropriate orders and judgments.

The executor's duty extends beyond the mere accounting for the assets which have come into his hands. Although particular situations may arise where the executor is purely an adversary of all others interested in the estate, such as an effort to establish derelictions of duty on his part, the relationship is ordinarily that of a fiduciary and representative, rather than that of an adversary.

The executor has a duty to see that the rights of the persons interested in the estate are correctly adjudicated.

[1] *State ex rel. State Bar v. Keller* (1962), 16 Wis. (2d) 377, 389, 114 N. W. (2d) 796, 116 N. W. (2d) 141.

[2] *Grand Rapids Bar Asso. v. Denkema* (1939), 290 Mich. 56, 287 N. W. 377; *State ex rel. Wright v. Barlow* (1937), 132 Neb. 166, 271 N. W. 282, 286; *In re Brainard* (1934), 55 Idaho 153, 39 Pac. (2d) 769; *Ferris v. Snively* (1933), 172 Wash. 167, 19 Pac. (2d) 942, 90 A. L. R. 278; *Arkansas Bar Asso. v. Union Nat. Bank* (1954), 224 Ark. 48, 273 S. W. (2d) 408.

[3] The same question arises with respect to administrators, and similar questions with respect to other fiduciaries.

"Ordinarily, it is no part of the duty of an executor to inform a legatee of the fact or terms of the bequest. An exception to this rule is admitted in cases where the devisee may hold under an independent title, as where he is also the heir at law of the testator. It has been held to be the duty of an executor who will profit by the failure of a legatee to claim a legacy within a prescribed period to use all reasonable diligence, with the knowledge and means of knowledge at his command, to inform the legatee of the facts of the bequest, in order that he may claim his bequest according to the terms of the will. It seems, however, that even in such case that the executor is not guilty of breach of duty in failing to inform the legatee of the terms or conditions of the legacy. The duties of the personal representative with respect to notification of persons entitled to share in the distribution of an estate, in connection with an order of distribution, is discussed in a subsequent section." [4]

"An executor represents the testator, and it is part of his duty to see that the will of the testator is properly executed. He likewise represents the legatees for whose benefit probate proceedings are had. . . ." [5]

"It has been several times held by this court that the executor of a will, whose duty it is to carry out the provisions of the will, is an 'aggrieved party' within the appeal statute if in his reasonable view the determination appealed from will not carry out those provisions. . . ." [6]

"In our opinion it may not be said that an executor has no duty to present to the courts his views as to the facts *and the law* to the end that the true intentions of the testator may be found and given effect. . . ." [7] (Emphasis added.)

"Such a person [an executor] is the representative of the testator and is charged with the duty of seeing that the will is probated and its provisions carried into effect. Public policy also requires that a legally executed will be probated, and the person named as executor has a public as well as a private duty to perform. If he in good faith believes that the will has been wrongfully denied

---

[4] 21 Am. Jur., Executors and Administrators, p. 498, sec. 226.

[5] *Will of Hughes* (1942), 241 Wis. 257, 263, 5 N. W. (2d) 791.

[6] *Estate of Satow* (1942), 240 Wis. 622, 625, 4 N. W. (2d) 147.

[7] *Will of Asby* (1939), 232 Wis. 481, 490, 287 N. W. 734.

probate by the county court, he should appeal from the decision." [8]

Although in *Will of Willing* [9] this court took a restrictive view of the propriety of an executor employing counsel to assist him in every duty of administration, we said: "He should not be expected, of course, to prepare papers relating to court proceedings."

The executor must be impartial among the beneficiaries, and he does not owe to each the same duty of advocacy in his behalf that an attorney or guardian *ad litem* for that individual would have. He does, however, have a duty to propose to the county court an adjudication of the rights of the beneficiaries which conforms to the law, as applied to the facts which can be ascertained with reasonable diligence. Where he is in doubt, he has a duty to pose the legal questions to the court. He has this duty whether or not the beneficiaries are represented by counsel individually retained. We think that in performing the duties just mentioned, the executor is sufficiently in the role of a representative of the beneficiaries so that his submission of such matters to the court for adjudication constitutes the practice of law. It follows that when the executor is not an attorney, such matters must be presented for him by an attorney licensed to practice law.

The supreme courts of several other states have decided that an executor's appearance in the conduct of a probate proceeding is not to be deemed the mere appearance of an individual in his own behalf, but is also a representation of others, and therefore an executor not licensed to practice law must appear by an attorney. [10]

---

[8] *Cowan v. Beans* (1914), 155 Wis. 417, 418, 144 N. W. 1129.

[9] (1926), 190 Wis. 406, 414, 209 N. W. 602. See also *Will of Robinson* (1935), 218 Wis. 596, 602, 261 N. W. 725; *Will of Roebken* (1939), 230 Wis. 215, 222, 283 N. W. 815, and *Estate of Greenwald* (1962), 17 Wis. (2d) 533, 541, 117 N. W. (2d) 609.

[10] *In re Otterness* (1930), 181 Minn. 254, 232 N. W. 318; *State Bar Asso. of Connecticut v. Connecticut Bank & Trust Co.* (1959),

It is surely a common occurrence that persons interested in an estate do not retain an attorney to protect their individual interests, but rely upon the executor to fulfil his duty to carry out proper administration and distribution. In those situations, the beneficiaries would not have the benefit of legal analysis of their rights and skill in preparing and presenting the orders and judgments necessary to give effect to their rights if the executor were proceeding without an attorney.

It may happen, of course, that in a particular proceeding there may be no difficult legal problem, and that a particular lay executor may successfully present the matter in such form as to protect the rights of everyone. Perhaps the instant case is such a situation. It does appear that each beneficiary under the Baker will has consulted with an attorney of his choice, and such attorney has approved the proposed distribution. It also appears that Mr. Baker's former counsel advised him, before withdrawal, as to the distribution which was proper under the will, and Mr. Baker has drawn his papers in accord with that advice. Nevertheless, the need for protection of beneficiaries in general from practice by unlicensed persons justifies the existence of a general rule and its application to this instance. To require the county court to determine, case by case, whether an unrepresented executor had properly protected the rights of all beneficiaries would impose an unmanageable burden.

We emphasize that in this case we are dealing with the executor's submission of matters to the court for adjudication. We do not say that the submission to the court of every report in a probate or trust matter, and every act of an executor in collecting debts, paying claims, preserving the assets, and preparation of tax returns constitutes the practice of law. Whether such activity involves the practice of law in any particular instance

146 Conn. 556, 153 Atl. (2d) 453; *Arkansas Bar Asso. v. Union Nat. Bank, supra,* footnote 2.

would depend upon the complexity of the questions which necessarily must be resolved. The Connecticut court distinguished between activity of a fiduciary which necessarily involves the practice of law and activity which may or may not, depending upon the type of problem presented.[11]

2. *Right to petition.* Sec. 4, art. I, Wis. Const., provides:

"The right of the people peaceably to assemble, to consult for the common good, and to petition the government, or any department thereof, shall never be abridged."

Petitioner contends that respondent's refusal to retain and consider on their merits the documents presented infringes his right to petition a governmental department.

This court has refused to accept a petition by persons not parties to a proceeding, asking the court to make a specific disposition of the pending proceeding.[12] The court conceded that the right of petition is an inherent right of the citizen under all free governments, but held that the right protected from abridgment by the constitution is the right as it was known and exercised at the time of the adoption of the constitution. "Petitions which have been established as a part of judicial procedure may be presented to courts, and such petitions are the only ones protected by the constitutional provision here invoked."[13]

In the case now before us the petition for allowance of the final account (as well as the other papers presented) was an appropriate type of document in the pending proceeding. But their presentation violated a different requirement of orderly administration of justice, and were rejected for that reason alone. Judge ROANG refused to retain them, and proceed upon their merits,

---

[11] *State Bar Asso. of Connecticut v. Connecticut Bank & Trust Co. supra,* footnote 10.

[12] *In re Stolen* (1927), 193 Wis. 602, 214 N. W. 379, 216 N. W. 127.

[13] *In re Stolen, supra,* page 632, footnote 12.

because of his conclusion (with which we agree) that presentation of them by Mr. Baker was, under the circumstances, the unauthorized practice of law. We consider that the prohibition against unauthorized practice of law is a valid and reasonable regulation, in the public interest, of the orderly conduct of judicial proceedings, and its application to a petition presented by an unlicensed person in a capacity where he represents others is not an abridgment of the right to petition, as guaranteed by sec. 4, art. I, Wis. Const.

3. *Right to obtain justice freely.* Sec. 9, art. I, Wis. Const., provides:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

Petitioner contends that if he is forced to retain and consequently pay an attorney of record he would be denied the right to "obtain justice freely, and without being obliged to purchase it."

In *Christianson v. Pioneer Furniture Co.*[14] this court said of sec. 9, art. I, Wis. Const.:

"That provision is very old. Its history dates back to the days of Magna Carta. It was designed to prevent a species of official exactions made as the price of delaying or expediting justice. From the lowest officer to the king himself, in the olden times, bribes were freely demanded and taken to procure the benefits of the laws. They bore no relation whatever to our system of exactions for expenses of litigation, called costs, or the charge as a tax on suits, imposed under laws which bear equally upon all; but they were arbitrary exactions sanctioned by the manners of the times, that went to the personal benefit of the judicial head or body controlling the execution of the law, or to servants or officers connected therewith. It was such abuse, among others, that the barons of England forced King John to abolish by grant-

[14] (1898), 101 Wis. 343, 347, 77 N. W. 174, 77 N. W. 917.

ing the Magna Carta. It contained the following as one of the guaranteed limitations upon kingly prerogatives: 'We will not sell the right and justice to anyone, nor will we refuse it, or put it off.' . . . ."

Sec. 9, art. I, Wis. Const., then, does not guarantee that there will be no expense to litigation; it guarantees that persons will not have to bribe or make arbitrary payments to officials in order to obtain justice. The application of the prohibition against unauthorized practice of law to an unlicensed person, appearing as executor and thus representing beneficiaries, does not violate sec. 9, art. I.

4. *Individual's right to appear in person.* Sec. 20, art. VII, Wis. Const., provides:

"Any suitor, in any court of this state, shall have the right to prosecute or defend his suit either in his own proper person, or by an attorney or agent of his choice."

Mr. Baker contends that he is a suitor prosecuting his own suit, and, consequently, that the provision just quoted gives him the right to proceed in his own proper person, without an attorney. But, as set forth earlier in this opinion, we consider that in presenting to the court for adjudication the matters here involved, Mr. Baker, as executor, was a representative of the beneficiaries, as well as himself.

Mr. Baker also appears to rely on the fact that the beneficiaries have approved his proceeding without counsel, and that the provision just quoted gives them the right to prosecute their suit by an "agent" of their choice. The history of this provision indicates that an unlimited right to be represented by any other person was considered and rejected. One proposal presented to the 1846 constitutional convention would have abolished the professions of attorney, counsellor, and solicitor and permitted any male person twenty-one years of age or over to appear in any court in the state in a representative

capacity for any other person.[15] A proposal presented to the 1847–1848 convention provided that every suitor has a right to "prosecute or defend his suit, either in his own proper person, or by an attorney or agent of his choice, *whether such agent be an attorney or not.*"[16] (Emphasis added.) This provision was withdrawn by its author[17] and the present provision subsequently adopted.

The foregoing history indicates that the term "agent," as used in sec. 20, art. VII, Wis. Const., has a limited meaning.

Attorneys-at-law have not always been the only class of persons entitled to represent others before courts.[18] In the light of the history, we consider that the term "agent" incorporated only those other classes of persons who may have been authorized to appear in court on behalf of others. Over the years the various classes have been merged so that at the present time attorneys licensed to practice law are the only persons authorized to appear on behalf of others before courts of this state.[19] As a consequence, the term "agent," as used in the constitution, is now coextensive with the term "attorney."

Many years ago, the supreme court of Michigan construed a similar provision in the constitution of that state, and held the word "agent" synonymous with the word "attorney."[20] In 1938, this court suggested, al-

[15] Wisconsin Historical Publications, Collections, Vol. 27, Constitutional Series, Vol. II at 532.

[16] Journal and Debates, Constitutional Convention (1847–1848), pp. 52, 53.

[17] Id. pages 70, 71.

[18] 5 Am. Jur., Attorneys at Law, p. 264, sec. 5; 1934 Wisconsin Law Review, 213, 215; 32 Notre Dame Lawyer (1956), 85.

[19] "Although some theoretical distinction is sometimes still maintained, the actual distinction between attorneys or solicitors and counsel or barristers is practically abolished in nearly all the states of this country." 5 Am. Jur., Attorneys at Law, p. 264, sec. 5.

[20] *Cobb v. Judge of Superior Court* (1880), 43 Mich. 289, 5 N. W. 309.

though it did not then decide, that the word "agent . . . may have substantially the meaning of 'attorney' when its constitutional and legislative history is fully considered. . . ." [21]

Mr. Baker relies on a 1919 opinion of the attorney general which stated:

"March 15, 1919.

"Honorable Theodore Benfey,
    *State Senator.*

"In your letter of March 13 you submit Bill No. 238, S., and state that your committee desires to be advised as to whether the proposed amendment to sec. 4052a, as provided in this bill, would be in contravention of sec. 20, art. VII, Wis. Stats.

"This amendment adds to sec. 4052a the following:

" 'In all estates involving assets in excess of one thousand dollars, the executor or administrator shall appear by an attorney.'

"Sec. 20, art. VII, Wis. Const., provides:

" 'Any suitor, in any court of this state, shall have the right to prosecute or defend his suit either in his own proper person, or by an attorney or agent of his choice.'

"In my opinion, this amendment requiring the executor or administrator to appear by an attorney in all proceedings in county court, where the assets of the estate are in excess of one thousand dollars, is clearly in violation of this provision." [22]

We feel that the attorney general failed to give sufficient consideration to the history of the constitutional provision set out above or to the fact that the executor represents the interests of others.

5. *Equal protection of the laws and due process of law.* Sec. 1 of the Fourteenth amendment, U. S. Const., provides in part:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[21] *Appeal of Cichon* (1938), 227 Wis. 62, 70, 278 N. W. 1.
[22] 8 Op. Atty. Gen. (1919), 181.

Mr. Baker argues, apparently, that the beneficiaries of the estate, as well as he, are denied equal protection of the laws if the court refuses to proceed to hear the matter submitted for adjudication unless the executor appears by an attorney. This argument is answered by the same proposition earlier set forth. The prohibition against unauthorized practice of law is a valid and reasonable regulation, in the public interest, of the orderly conduct of judicial proceedings. The attorney is licensed to practice after fulfilling standards which are relevant to his ability to represent others before the courts. Such license is a sufficient reason for refusing to permit the unlicensed to represent others. No executor similarly situated would have the right to proceed without an attorney. Such refusal does not deny the equal protection of the laws.

Mr. Baker apparently argues that the beneficiaries will be deprived of property without due process of law because he anticipates that the county court will arbitrarily allow a fee which is substantially in excess of the reasonable value of services remaining for an attorney to perform.

This contention has no merit. It is based upon the assumption that the county court will allow the attorney who next appears in this matter an amount which, added to the fee already paid, will equal the amount computed according to the schedule of minimum fees suggested by the State Bar of Wisconsin, arbitrarily and without considering the reasonable value of the services actually rendered. Mr. Baker apparently considers that the minimum fee is excessive under circumstances pertaining in the administration of this particular estate.

As previously indicated, we consider that the prohibition against unauthorized practice of law applies to an executor appearing in court to seek an adjudication of the rights of beneficiaries, and the fact that the requirement of obtaining representation by a licensed attorney will involve some expense is not a taking of property without due process of law.

The amount of the fee chargeable to the estate will be determined by the court, presumably at the time of the allowance of the final account. Mr. Baker will have the opportunity to present to the court any facts tending to show the nature and extent of the services rendered, and any other facts relevant to a proper fee.[23] If aggrieved, he will have the right to appeal to this court from the county court's order determining the fee allowed.

Judge ROANG'S position with respect to the minimum fee schedule is stated in his return, as follows:

". . . the Court has followed the practice of using the State Bar minimum fee schedule as a guide to prevent overcharges as well as undercharges, and alleges further that the Court has been guided by the rule stated in *Lathrop vs. Donohue* (1959), 10 Wis. (2d) 230, 102 N. W. (2d) 404 that a lawyer's charge for services, even when based upon the recommended schedule, is always subject to the Court's determination of reasonableness."

[23] "In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee." Schedule of Minimum Fees for Attorneys and Related Materials, State Bar of Wisconsin, Canon 12, pp. F-3, 4, as revised in 1963.

The schedule of minimum fees of the State Bar rests for its validity upon the collective judgment of the committee or groups that passed upon it as a scale of fees generally fair for the types of services listed. As a result the schedule is evidence relevant to the question of a reasonable charge for services, but it has no other legal force.[24]

The judicial determination of the amount of the fee will assure Mr. Baker and the other beneficiaries of due process of law.

6. *Inherent power of probate court to require executor or administrator to retain attorney.* Judge ROANG'S position was that Mr. Baker, as executor, represents the interests of others, and therefore when he comes before the court to seek an adjudication of their rights, he is practicing law. This was the theory debated before us by the parties in briefs and on oral argument, and we have stated above our conclusions on the points raised.

It seems to us, however, that there is another basis on which Judge ROANG'S action could be sustained in the present case (where Mr. Baker does represent the interests of others) but which would also sustain the same action in a situation where the executor or administrator appears to be the sole beneficiary, and to represent no other person.

This is the proposition that the court with probate jurisdiction has inherent power to require the employment of an attorney at various steps of a probate or administration proceeding. With today's volume and complexity of probate proceedings these courts cannot perform or review each step of such proceedings to be sure it has been correctly taken, and need to be able to rely upon the responsibility of an attorney, in order to have some assurance that the process will be correctly carried out.

---

[24] *Conway v. Sauk County* (1963), 19 Wis. (2d) 599, 604, 120 N. W. (2d) 671.

A probate proceeding has attributes which are different from the adjudication in a civil or criminal action of disputes between individuals or between an individual and the state. Contests do arise, of course, in probate proceedings, and must be adjudicated there. But the principal purpose of a probate proceeding is the orderly devolution of property when its disposition is made necessary by death. Society has a special concern that such proceedings be properly carried out.

Unless probate matters are prepared and presented with diligence and skill, wills may be admitted without proper notice to the heirs, the identity of the heirs may be mistakenly determined without proper notice to those adversely affected; creditors may be unable to present their claims because of lack of notice; proceedings for authority to sell real estate may be defective; property may be distributed and real estate assigned contrary to the rights of persons interested; and taxes due the state may be improperly determined.

The public interest in the devolution of property in accordance with the will of the deceased or the law of this state may be thwarted, and title to property, particularly real estate, may be left unmarketable, because procedural steps were not properly taken.[25]

There may, of course, be situations where the steps to be taken are so obviously uncomplicated that the court would have no hesitancy in entertaining and passing upon the particular petition even though it is not presented by an attorney. But, as previously suggested, to require the county court to determine, case by case, whether each step of a proceeding had been properly taken would impose an unmanageable burden.

An executor or administrator is, in a sense, the representative of the deceased. He is also a trustee for persons

---

[25] It may happen, of course, that one who petitions for admission of a will or for administration does not employ an attorney. After appointment of the executor or administrator, however, his attorney can and should review the earlier proceedings to determine whether they were correctly taken.

interested in the estate. We consider him also, in a sense, an officer of the probate court, with a function to perform in the probate proceeding itself. He is subject to the control of the court to see that the proceeding is properly carried out, in the interests of the public as well as those whose rights might be directly affected by an error.

We deem the executor or administrator enough the officer of the court, and the interests of society in the proper transmission of property at death, sufficient that the probate court has inherent power to require such officer to retain counsel.

Under this rationale, the constitutional problems raised by Mr. Baker present no greater problem than they do with respect to the proposition that an executor who represents the interests of others is practicing law.

A. *Right to petition.* The requirement that an executor or administrator be represented by counsel is a reasonable regulation, in the public interest, of the orderly conduct of judicial proceedings, and is not an abridgment of the constitutional right to petition.

B. *Right to obtain justice freely.* Sec. 9, art. I, Wis. Const., is inapplicable, as already explained in part 3 of this opinion.

C. *Individual's right to appear in person.* An officer of the court, in his capacity as such, is not deemed a "suitor" under sec. 20, art. VII, Wis. Const.

D. *Equal protection of the laws and due process of law.* Application of this rule does not deny equal protection of the laws, nor take property without due process of law, for the same reasons already stated in part 5 of this opinion.

*By the Court.*—Peremptory writ of mandamus denied. Action dismissed.