Frank GREENOUGH and Doris K. Green-
ough, Appellants (Defendants and
Cross-Defendants below),

v.

PRAIRIE DOG RANCH, INC., Appellee
(Cross-Claimant below),
and
Wyoming Production Credit Association,
(Plaintiff below).

No. 4359.

Supreme Court of Wyoming.

Feb. 10, 1975.

Lawrence A. Yonkee and Tom C. Toner, Redle, Yonkee & Arney, Sheridan, for appellants.

Henry A. Burgess, Burgess & Davis, Sheridan, for appellee.

GUTHRIE, Justice.

Appellants herein, cross-defendants below, prosecute this appeal from a summary judgment decreeing the foreclosure of certain security agreements and a mortgage executed by the appellants solely upon that part of the judgment which awarded an at-

torney's fee in the sum of $19,163, being ten percent of the principal and interest found due.[1] This judgment was awarded appellee upon a cross-claim against appellants, who were defendants in the suit to foreclose senior mortgages held by the Wyoming Production Credit Association and who joined appellee as holder of such junior encumbrances.

After entry of this judgment and during the pendency of this appeal this entire judgment, including the allowance for the attorney's fee herein disputed, was paid by T. R. Ranch, Inc., which had become the purchaser of the premises covered by the foreclosure decree. Appellee herein[2] moved this appeal be dismissed, asserting that appellants were not real parties in interest and that the action was moot because the judgment had been paid in full and a release thereof demanded. Because the factual situation did not clearly develop whether the appellants herein had any right or claim to the proceeds or fruits of this appeal if successful, the motion to dismiss and the appeal were joined for hearing and argument.

### THE MOTION TO DISMISS

■■ This court has heretofore considered the question of a "real party in interest" and has defined such party as one with "actual and substantial interest in the subject matter" and noted that this interest may be a special or equitable one, Weber v. City of Cheyenne, 55 Wyo. 202, 97 P.2d 667, 669. That case further notes it to be such interest as may be affected by the decree or an entitlement to "the avails of the suit." Because a question of jurisdiction is involved, Wyoming Wool Marketing Association v. Urruty, Wyo., 394 P.2d 905, 908, it is necessary to examine this because when confronted with a question of jurisdiction the court must determine it, it being a fundamental question, Gardner v. Walker, Wyo., 373 P.2d 598, 599. Because of this the court required supplemental

---

1. No appeal has been made from the judgment entered in favor of Wyoming Production Credit Association.

2. Prairie Dog Ranch as successor to the interest of the Bank of Commerce was substituted as appellee herein.

showing by the parties hereto of the nature and details of the transaction from which the payment of this judgment arose. We now have before the court a copy of the "Purchase Offer" of T. R. Anderson, containing his offer to purchase these premises, and the terms thereof, from Frank Greenough and Doris K. Greenough dated November 1, 1973, and an escrow agreement between St. Paul Title and Insurance Company and T. R. Ranch, Inc., and Frank Greenough and his wife pertaining to the payment of the judgment herein, and the terms under which it was paid, dated March 6, 1974. In addition, there are several affidavits of counsel and copies of letters from the firm of attorneys representing T. R. Ranch, Inc., to the title company and appellants' attorney.

One of the contentions of appellee herein in support of its motion is that, because the proceeds of the sale of this ranch are being held by an escrow agent for the benefit of certain creditors whose claims exceed the amounts due and payable, appellants have no right or interest in or to said proceeds and will receive no funds therefrom. There is a rather broad general rule that an action need not necessarily be brought in the name of the person who ultimately will benefit from the recovery, Allen v. Baker, D.C.Miss., 327 F.Supp. 706, 710; Race v. Hay, D.C.Ind., 28 F.R.D. 354, 355; 6 Wright & Miller, Federal Practice and Procedure: Civil § 1543, p. 645 (1971). The fact that creditors of appellants may receive these proceeds does not deprive these appellants of their status as real parties in interest. In the case of Lee v. Mack, 15 Misc.2d 657, 182 N.Y.S.2d 391, when such question was raised because the United States had asserted a lien on the proceeds for a sum in excess of the plaintiff's claim and had served upon defendants a direction requiring them to pay any sums due directly to the Federal government, the court held that plaintiff remained the real party in interest. Nor can we say, even absent citation of authority, that the application of these funds to the payment of the debts of these appellants resulting in a discharge of the liability up to the amount of this payment does not give them a real and substantial interest in the fund.

In urging its contentions as to the "real party in interest," appellee relies upon Wyoming Wool Marketing Association v. Urruty, supra, which did not in any manner modify the definition of "real party in interest" set out in Weber v. City of Cheyenne, supra. Further reliance is made upon the case of Gardner v. Walker, supra, which is not applicable on its facts and merely holds that the insurance company which had paid all the damages is subrogated to the rights of the insured, and Gardner's total loss having been covered and paid by the insurance company he could not maintain the suit. It is suggested that this illustrates one of the clear reasons for the "real party in interest" rule because a recovery for the insured in that case would not have relieved defendant from a suit by the insurance company against him for having occasioned its loss. Reliance is also made upon the case of Royster v. English, 138 Colo. 428, 334 P.2d 733, which we find totally inapplicable herein because there is undisputed evidence in that case that this claim had been voluntarily compromised and settled between the parties thereto, and the court treats this as a matter of mootness rather than as a matter of "real party in interest."

Without discussing at length the rather involved instruments covering this transaction, it would appear that this judgment was paid in full, including the attorney's fee, in order that Greenoughs might deliver merchantable title to the premises herein and that there was clear agreement that that any surplusage or residue from the funds deposited with the title company to pay this judgment which might result from the reduction of the attorney's fee would be redeposited in a designated bank, that the first $10,000 thereof would be credited directly to the appellants, and that any balance thereafter should be paid to a so-called "security fund" which, although it was to be administered for payment of debts, was to be deposited in the name of

Frank and Doris K. Greenough as tenants by the entireties, thus giving them the legal title to such account.

The second facet of appellants' contention rests in the general rule that payment of the money judgment destroys the right of appeal. This is true if the payment is voluntary but an involuntary payment does not deny the right of appeal. Although neither party makes reliance thereon, the rationale of Yellowstone Sheep Co. v. Ellis, 55 Wyo. 63, 96 P.2d 895, is applicable to our disposal hereof. In that case the trial court entered a money judgment for the appellant, providing however that this money judgment could be satisfied if certain valid State leases were deposited with the clerk of court with an assignment to the appellee. We find the following statement by the court in commenting thereon, 96 P.2d 900:

"* * * We are inclined to believe that any reasonable man would have acted likewise. Plaintiff did not so much accept a benefit, as it attempted to avoid an evil. Forfeiture of the right of appeal under the circumstances would be altogether too harsh to be consistent with justice. The motion to dismiss must be overruled."

In this case appellant herein only sought to avoid the evil of unmerchantable title and to be able to convey the same, and his inability to so convey merchantable title might well have defeated his sale. We find a clear statement of the applicable rule in 2 Freeman on Judgments, § 1165, p. 2410 (5th Ed.):

"One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error. Nevertheless there are cases deciding that one

paying a judgment against him precludes all appeal therefrom. The better view, we think, is, that though execution as not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of his right to appeal, unless payment be by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination. * * *" [3]

The case of Joannin v. Ogilvie, 49 Minn. 564, 52 N.W. 217, involved the recovery of money to be able to discharge a lien based upon an unfounded claim. The landowner there paid the lien so he might clear his title to the premises and obtain a loan. The court held this was an involuntary payment and observed:

"* * * 'There is a class of cases where, although there be a legal remedy, a person's situation, or the situation of his property, is such that the legal remedy would not be adequate to protect him from irreparable prejudice; where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand. In such cases, his act will be deemed to have been done under duress, and not of his free will.' [DeGraff v. Board of County Com'rs Ramsey County, 46 Minn. 319, 48 N.W. 1135] * * *" [4]

The applicability of this case is emphasized because this payment was necessary to clear the title and to enable appellants to deliver merchantable title to the purchaser, and the instruments clearly show an intention to preserve this claim. Nor do we find any tender or suggestion that the appellee herein would have accepted the undisputed portion of the judgment.

---

3. For recognition of this rule and application in varied circumstances see Cottrell v. Prier, 191 Or. 571, 231 P.2d 788, 789; Lucas v. First Nat. Bank of Pawnee, 171 Okl. 606, 43 P.2d 752, 753; Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698, 708.

4. Lumaghi v. Abt, 126 Mo.App. 221, 103 S.W. 104; 4 C.J.S. Appeal and Error § 214a, p. 637.

For these reasons we view the payment of this judgment, at least insofar as the disputed portion was concerned, as involuntary and not such as would destroy the right of appeal.

The motion to dismiss this appeal is therefore denied.

## THE SUMMARY JUDGMENT

The sole question posed by this appeal is the propriety of the entry of a summary judgment for a reasonable attorney's fee in the sum of $19,163, which was ten percent of the amount claimed. Appellants insist there was no proper evidentiary basis therefor and we agree with that view.

 There is a well-recognized rule that the determination of the amount of a reasonable attorney's fee is a factual question to be decided upon the evidence and facts in each individual case, Meagher v. Kavli, 251 Minn. 477, 88 N.W.2d 871, 883; Parker v. State Industrial Accident Commission, 242 Or. 78, 408 P.2d 94, 96; 7 Am.Jur.2d Attorney at Law, § 236, p. 183; 7 C.J.S. Attorney and Client § 191, p. 1080. This is the ultimate basis for our disposal of this matter. Appellee in this case had "a definite burden [of proof] to clearly demonstrate there is no genuine issue of material fact, [Citations] and unless this is clearly demonstrated no such judgment should be granted [Citation]," Kover v. Hufsmith, Wyo., 496 P.2d 908, 910; Forbes Company v. MacNeel, Wyo., 382 P.2d 56, 57. The United States Supreme Court has expressed this rule as follows:

" * * * This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * *'." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, citing Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 728, 88 L.Ed. 967, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593.

An examination of the record reveals that the only evidence directed at the matter of a reasonable attorney's fee is the affidavit of Jerry A. Yaap, the attorney who filed this suit for Wyoming Production Credit Association, which after the recitation of his membership in the Bar and experience, sets out the following:

"That in Affiant's experience the normal attorney's fee awarded by the courts in mortgage foreclosure actions is 10 percent of the principal and interest due thereon.

"That in Affiant's opinion 10 percent of the principal and interest in the present action or the sum of $47,737.33 is a reasonable attorney's fee."

We find nothing else in this record which tends to prove the reasonable amount of an attorney's fee insofar as the appellee's attorney is concerned so that the trial court only had before it the statement that a ten percent fee is normally awarded in such mortgage foreclosure actions. It is interesting that Yaap's affidavit recites some facts about the work that will be necessary for him to perform in connection with the claim of his client, which of course yields no light upon the time or efforts which would be necessarily expended by appellee's attorney.

The word "reasonable," when applied to a legal proceeding in and of itself carries an inference that it must be considered in light of the circumstances. A simple, clear statement of the application of this to an attorney's fee appears in the case of United Development Corporation v. State Highway Department, N.D., 133 N.W.2d 439, 446, 22 A.L.R.3d 662, as follows:

"The reasonableness of an attorney's fee to be taxed by the prevailing party must always depend upon facts and circumstances of the particular litigation. * * *"

See Meagher v. Kavli, supra; Parker v. State Industrial Accident Commission, supra; and Featherstone v. Barash, 10 Cir., 382 F.2d 641, and numerous authorities cited therein.

 This court has approved the rule that there must be some proof or evidentiary basis for a determination of a reasonable attorney's fee, Combs v. Walters, Wyo., 518 P.2d 1254, 1255; Wallace v.

Casper Adjustment Service, Wyo., 500 P.2d 72, 73.

■ There are certain factors which may be considered in the determination of a reasonable attorney's fee. These are the ability and quality of the attorney; the kind and complexity of the matter; the work actually performed and the manner in which it was done; and the result, Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144, 146; Barnes v. Mid-Continent Casualty Company, 192 Kan. 401, 388 P.2d 642, 646. The Code of Professional Responsibility of the American Bar Association (adopted August 12, 1969), in § DR 2–106, sets out eight suggested factors, some being a duplication of the above. "The fee customarily charged in the locality for similar services" is one of the factors suggested as a guide in determining the reasonableness of a fee in this code. Unless and until there be some evidence in the record besides the customary fee, we see no basis for determination of the other important and necessary factors upon which the reasonableness of the fee should be based.

The appellants urge that we should adopt this section and require a claimant to introduce evidence of all the factors set out in § DR 2–106, supra. We view this section as helpful and pertinent to the problem of the determination of a reasonable attorney's fee but do not adopt this as a rule of evidence for such determination.

Although this case does not involve reliance upon a minimum fee schedule,[5] which the writer would deem of at least as great probative value as a statement of normal charges by one attorney, because such schedule represents collective judgment of a group of lawyers and a distillation of their legal wisdom, we find that cases which discuss such schedules have much persuasive value.

■ The Wisconsin Supreme Court, in the case of State ex rel. Baker v. County Court of Rock County, Branch 1, 29 Wis.

2d 1, 138 N.W.2d 162, 171, 19 A.L.R.3d 1089, cites with approval Lathrop v. Donahue, 10 Wis.2d 230, 102 N.W.2d 404, 414, affirmed 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191, rehearing denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72, as follows:

" * * * a lawyer's charge for services, even when based upon the recommended schedule, is always subject to the courts' determination of reasonableness."

The same court has also styled such fee schedule as having some relevance to the question but no other legal force, and even when based upon such a schedule is always subject to the court's determination of reasonableness, Conway v. Sauk County, 19 Wis.2d 599, 120 N.W.2d 671, 675. They have also been described as "merely * * * a guide in determining the reasonable value of the attorney's services," American Jewish Joint Distribution Committee v. Eisenberg, 194 Md. 193, 70 A.2d 40, 43.

■ Absent any evidence from which it might be determined that this fee was reasonable for this case, the movant has failed to sustain his burden. There is no showing, nor does the affidavit of Yaap demonstrate, that the attorney did perform the work normally done in such proceeding so we deem this an insufficient evidentiary basis for any such determination.

Appellee's counsel contends with much vigor that the affidavit of appellants' counsel was not timely filed nor properly served upon him and should not have been considered by the trial court. We find no indication that it was, but find no occasion to express any opinion thereon because of our view that movant has failed to establish by competent evidence the reasonable value of the attorney's fee herein awarded.

The judgment is reversed and remanded to the district court with instructions to determine what is a "reasonable fee" to be allowed appellee's counsel for his services in this matter.

5. Justice McEwan suggests reference to minimum fee schedules be deleted because they have been held in violation of the Sherman Anti-Trust Act in some cases. This opinion, however, relies solely upon these cases as illustrative and persuasive without any consideration of the validity of such schedules.