C. L. ANDERSON, Richard A. Fait and F. M. Rosemore, Appellants (Defendants),

v.

Harold E. MEIER and C. Paul Anderson, Appellees (Plaintiffs).

No. 5578.

Supreme Court of Wyoming.

Feb. 26, 1982.

David A. Scott and Lee E. Karavitis of Murane & Bostwick, Casper, for appellants.

G. Joseph Cardine of Cardine, Meenan & Marken, Casper, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellants-defendants appeal from a summary judgment entered against them in an action on a $120,000.00 promissory note. The $120,000.00 was part of the consideration to be paid by appellants to appellees-plaintiffs for purchase of the latter's shares of stock in the Western National Bank of Lovell, Lovell, Wyoming. Appellants had also moved for a summary judgment and had counterclaimed for $176,962.00, said to be the amount of loss resulting from inability to collect on two loans to bank customers. Appellants contend that appellees guaranteed the notes representing such loans to be enforceable and legally valid. The trial court did not find such guaranty.

In addition to allowing recovery for the $120,000.00 with interest, the summary judgment awarded recovery to appellees of attorney fees in the amount of $12,901.85. Two issues are involved in this appeal. Did the appellees guarantee enforceability of the notes? and, Were the attorney fees properly allowed in the summary judgment?

We affirm.

## GUARANTY

The agreement between the parties for purchase and sale of the bank stock reads in pertinent part:

"It is the intent of the parties pursuant to the terms of this letter of intent to Buy and Sell stock in the Western National Bank of Lovell, Wyoming as follows:

\* \* \* \* \* \*

"3. Sellors [sic] guarantee that \* \* \* all signatures on instruments are genuine and that the instrument is what it purports to be.

"4. Buyers represent that all bank records have been made available; that they have inspected the same and are satisfied with the inspection; that purchase is tendered on the basis of their inspection and not in reliance on any oral representations."

At the outset, we must examine that which appellants contend with reference to the guaranty in paragraph 3 of the agreement. In their answer, they refer to the guaranty as one of

"*legality and enforceability* of all outstanding documents \* \* \* pertaining to loans made to third parties by the bank which were outstanding at the time the said 'Letter of Intent' was executed, including the *validity and enforceability* of all security agreements pertaining to said loans." (Emphasis added.)

In their brief, appellants contend the guaranty to be "that each instrument was *legally valid*" (emphasis added), but that the guaranty was not "of collection or collectability [sic]."

To prevail in their action, it seems that appellants must establish the guaranty to be one of collectibility. Indeed, it is difficult to discern the distinction between "collectibility" and "enforceability" and "legally valid" when applied to the circumstances relative to the notes of the two bank customers.

Both notes resulted in litigation.[1] In one of the instances (hereinafter referred to as Moncur note), a jury denied recovery on the note[2] because it found that the bank damaged the makers by breaching an agreement to extend a line of credit to the mak-

1. See *Western National Bank of Lovell v. Moncur*, Wyo., 624 P.2d 765 (1981); and *Western National Bank of Lovell, Wyoming v. United States of America*, D.C.Wyo., Civil No. C77–047 (1978 Judgment).

2. Actually, there were three notes, one by each

ers.[3] In the other instance (hereinafter referred to as Mangus note), an attempt to proceed against the security for the note was defeated when the court found that the Internal Revenue Service had priority inasmuch as the bank had filed the financing statements in the wrong county.

If the losses resulting from the litigation in these two instances were subject to recovery from appellees under the guaranty, the guaranty would be one of collectibility. Appellants are endeavoring to *collect* the notes from appellees. The notes were not faulty in themselves. They were simply not "collectible" from the makers. One because of a breach of a separate arrangement and the other because of the failure of security. Recovery on them from appellees as requested in appellants' counterclaim would require an interpretation of the guaranty to be one of "collectibility."

Was it? The guaranty was that "the instrument is what it purports to be." Purport is defined:

> "*As a verb.* To have the appearance, often the specious appearance, of being, intending, claiming, etc., that which is implied or inferred; to have the appearance or convey the impression of being, meaning, or signifying some particular thing * * *." 73 C.J.S. Purport, pp. 1259–1260.

> " * * * 'Purport' * * * means 'to have the appearance or convey the impression of being, meaning, or signifying some particular thing; * * *.' " *State v. W. S. Buck Mercantile Co.*, 36 Wyo. 47, 264 P. 1023, 1030 (1928).

> " * * * The purport of a written instrument is usually its meaning; what it intends to show; what is apparent; what it shows on its face. * * * " *Swanson v. Pontralo*, 238 Iowa 693, 27 N.W.2d 21, 24 (1947).

> " * * * The word 'purport' is generally used in connection with the discussion of a written instrument to show its meaning as it appears on the face of the instrument. * * * " *Hall v. State*, 95 Okl.Cr. 284, 245 P.2d 132, 134 (1952).

> " * * * The word 'purporting' means what appears on the face of the instrument. It means the apparent, and not the legal, import. * * * " *McCraney v. Glos*, 222 Ill. 628, 78 N.E. 921, 923 (1906).

> " * * * 'The purport of an instrument means the substance of it as it appears on the face of it, in the eyes of all who read it' * * *." *Roberts v. State*, 72 Miss. 110, 16 So. 233, 234 (1894); *Thomas v. State*, 103 Ind. 419, 2 N.E. 808, 812 (1885); *State v. Chinn*, 142 Mo. 507, 44 S.W. 245, 246 (1898).

> "A promise or engagement, in writing, to pay a specified sum at a time therein limited, or on demand, or at sight, to a person therein named, or to his order, or bearer. A written promise made by one or more to pay another, or order, or bearer, at a specified time, a specific amount of money, or other articles of value. An unconditional written promise, signed by the maker, to pay absolutely and at all events a sum certain in money, either to the bearer or to a person therein designated or his order, at a time specified therein, or at a time which must certainly arrive." Black's Law Dictionary, p. 1093 (5th Ed. 1979).

On their faces, both customer instruments appeared to be promissory notes. They claimed to be promissory notes. They had the appearance and conveyed the impression of being promissory notes. In the eyes of all who read them, the substance of the instruments are those of promissory notes. In short, they "purport" to be promissory notes. Appellees' guarantee was that they would be that which they import, i.e., promissory notes.

And they are promissory notes. They were signed by the makers. They were payable to the bank. They contained an

---

of three partners in the enterprise to which the loan was made.

**3.** The notes upon which the action was predicated were made after the execution of the

letter of intent. Appellants and their agents controlled and monitered the subsequent litigation on these notes.

unconditional promise to pay a sum certain in money and they contained no other promise, order, obligation or power. They were not certificates of deposits.

Pursuant to § 34–21–302, W.S.1977, "note" is defined further in the context of negotiable instruments in § 34–21–304, W.S.1977, which provides in pertinent part:

"(a) Any writing to be a negotiable instrument within this article must:

"(i) Be signed by the maker or drawer; and

"(ii) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

"(iii) Be payable on demand or at a definite time; and

"(iv) Be payable to order or to bearer.

"(b) A writing which complies with the requirements of this section is:

\* \* \* \* \* \*

"(iv) A 'note' if it is a promise other than a certificate of deposit.

"(c) As used in other articles of this act [§§ 34–21–101 to 34–21–1002], and as the context may require, the terms 'draft,' 'check,' 'certificate of deposit' and 'note' may refer to instruments which are not negotiable within this article as well as to instruments which are so negotiable."

Appellants do not contest the genuineness of the signatures on the Moncur and Mangus notes. They do not contend that the instruments are falsely made or forged. They do suggest that the promise to pay in the Moncur note was not unconditional since the bank had a separate understanding with the makers relative to a line of credit. In this suggestion, appellants overlook the plain language of § 34–21–304(a)(ii), W.S.1977 that requires *the note to contain* "an unconditional promise" and "no other promise \* \* \*." The Moncur note did *contain* an unconditional promise and no other promise. Section 34–21–305, W.S. 1977 provides:

"(a) A promise or order otherwise unconditional is not made conditional by the fact that the instrument:

"(i) Is subject to implied or constructive conditions; or

"(ii) States its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance with or 'as per' such transaction; or

"(iii) Refers to or states that it arises out of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration; or

"(iv) States that it is drawn under a letter of credit; or

"(v) States that it is secured, whether by mortgage, reservation of title or otherwise; or

"(vi) Indicates a particular account to be debited or any other fund or source from which reimbursement is expected; or

"(vii) Is limited to payment out of a particular fund or the proceeds of a particular source, if the instrument is issued by a government or governmental agency or unit; or

"(viii) Is limited to payment out of the entire assets of a partnership, unincorporated association, trust or estate by or on behalf of which the instrument is issued.

"(b) A promise or order is not unconditional if the instrument:

"(i) States that it is subject to or governed by any other agreement; or

"(ii) States that is it [sic] to be paid only out of a particular fund or source except as provided in this section."

When measured against the terms of such section, the promise in the Moncur note was unconditional.

■ Appellants acknowledge the Mangus note to have appeared on its face to have been a secured promissory note, but they contend that they were actually only partially secured because of the misfiling of the financing statements. The perfection

of the secured interest was something outside of the note itself. It pertains to collectibility. The guaranty was not to assure proper filing of the financing statements, not to assure against the makers' bankruptcy, or not to assure against similar occurrences outside of the note itself.

Finally, we note that the intent of the parties was not only plainly expressed in paragraph 3 of the agreement, but it was further evidenced in paragraph 4 thereof, supra. In it, appellants agree that they have inspected the bank records (including the Moncur and Mangus notes) and that the "purchase is tendered on the basis of their inspection and not in reliance on any oral representations." The records would reflect the place of filing of the financial statements for the Mangus note. Appellants were sufficiently satisfied with the status of the Moncur note to direct the litigation relative to it (see footnote 3). Appellant Anderson stated that he was aware of the doubtful quality of the Moncur notes at the time of purchase. Anderson is an attorney-at-law and has been involved in the acquisition of over fifteen banks since 1960. He is president of several banks. Appellant Fait is a certified public accountant. He served on the boards of four or five banks and has conducted audits of banks. We recognize that purchases and sales of banks and financial institutions are not usually made with full value being attributed to outstanding loans or notes. Some of such are not collectible, and some are collectible only in part. The loans and notes are spread and graded on their potential for collectibility when such purchases and sales are made.

If it became necessary to look beyond the plain language of paragraph 3 of the agreement for the intent of the parties, paragraph 4 and the circumstances of the transaction reflect such intent not to be a guaranty by appellants of the collectibility of customer notes.

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]" *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980).

■ Appellees did not guarantee the enforceability of the customer's notes. Such notes were that which they purported to be.

## ATTORNEY FEES

Appellants contend that the affidavit of appellee Meier was insufficient as a basis for an award of attorney fees. The affidavit reads in pertinent part:

"1. Affiant, Harold E. Meier, is an attorney licensed to practice law in the State of Wyoming, a long-time resident of said state and formerly practiced law at Lander, Wyoming for more than 10 years, practicing in the field of banking, commercial paper, promissory notes, and matters involved in the above-entitled lawsuit. Affiant is familiar with legal work involved in cases of this kind and is familiar with attorneys' fees and what are necessary, fair and reasonable.

"2. Attorneys' fees expended in this cause to date are in the sum of $12,901.85. Such attorneys' fees were necessarily incurred in an effort to collect the sum due on the Promissory Note attached to plaintiffs' Complaint and defendants have agreed to pay reasonable attorneys' fees incurred in said collection.[4] The attorneys' fees incurred thus far were necessary and are reasonable under the circumstances. * * * "

Appellants did not submit counter-affidavits, and the record did not contain any other information relative to attorney fees.

4. The note so provided.

Reasonableness of an attorney's fee must always depend upon facts and circumstances of the litigation and there must be some proof or evidentiary basis for determination of a reasonable attorney fee. *Downing v. Stiles*, Wyo., 635 P.2d 808 (1981); *Greenough v. Prairie Dog Ranch, Inc.*, Wyo., 531 P.2d 499 (1975). The court in passing on the reasonableness of attorney fees will consider the amount of work and skill entailed, the amount of money involved, the responsibilities assumed, the ability and quality of the attorney, the kind and complexity of the matter, the work actually performed, the manner in which it was done, and the result obtained. *Downing v. Stiles*, supra; *Greenough v. Prairie Dog Ranch, Inc.*, supra.

Evidence *only* of the amount of attorney fees normally awarded in cases involving the same type of claim is insufficient upon which to award attorney fees, *Greenough v. Prairie Dog Ranch, Inc.*, supra. A complete lack of evidence as to the value of attorney fees is likewise insufficient, *Downing v. Stiles*, supra. Evidence *only* of the usual charge made by a collection agency is also insufficient to an award of collection costs, *Wallace v. Casper Adjustment Service*, Wyo., 500 P.2d 72 (1972).

In this case, the amount stated in the affidavit as reasonable attorney fees was an amount already incurred for such. They were stated to be reasonable, and they were stated to be necessary. The amount was not computed on a percentage basis, or on the basis of that normally awarded, or as a usual charge. The trial court had before it the record reflecting the amount of money involved in the case, the work performed, the manner in which it was done, the kind and complexity of the matter, the skill entailed and the responsibilities assumed. We require more than that reflected in the administrative portion of the record, but the affidavit in this case was sufficient for the purpose. The appellants did not indicate to the trial court that there was an issue over the fact of reasonableness of the attorney fees. See *Wunnicke Finance Company v. Tupper*, Wyo., 373 P.2d

142 (1962), and *Edmonds v. Valley National Bank of Arizona*, Wyo., 518 P.2d 7 (1974). Without giving the trial court some indication of the existence of a question of fact as to the reasonableness of the attorney fees, the evidence upon which the award was here made in a summary judgment was sufficient. *Combs v. Walters*, Wyo., 518 P.2d 1254 (1974); *Wallace v. Casper Adjustment Service, supra*.

Affirmed.